UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDRE TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO:     10-0175** |
| **NOVARTIS PHARMACEUTICALS** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

### ORDER

Before the Court is **Defendant Novartis Pharmaceuticals Corporation's Motion for Protective Order and/or to Quash the Depositions of the Corporation's President, General Counsel, and Vice President of Human Resources (R. Doc. 31)** seeking a Protective Order precluding the Plaintiff from taking the depositions of Defendant's President, Andy Wyss, General Counsel, Dorothy Watson, and Vice President of Human Resources, Steven Baert and quashing the depositions of those individuals.  No opposition has been filed.  The motion was heard on the briefs on December 1, 2010.

### I.     Factual Background

Pro Se Plaintiff, Andre Turner, brings this action alleging racial discrimination and retaliation under Title VII and Section 1981.  Plaintiff contends that he is an African-American who was employed by Novartis Pharmaceuticals.  Plaintiff contends that, despite the fact that he was an employee in good standing from May 2002 through August 2007, in August of 2007 he was placed on a 90-day Performance Improvement Plan by the Defendants with the understanding that if his sales performance did not improve, his employment would be terminated.  Plaintiff contends that

he was placed on this plan after he had "sub par" sales performance due to the Defendant's "unrealistic sales goals." Specifically, the Plaintiff contends that his sales territory included the New Orleans metro area and the Mississippi Gulf Coast. After Hurricane Katrina , the Plaintiff contends that he lost a large percentage of his customers. Despite the fact that a large percentage of his customers were lost due to the Hurricane, the Plaintiff contends that the Defendants unrealistically raised his sales quota.

Plaintiff contends that he participated in the performance plan and improved his sales high enough to be removed from the plan. However, the Defendant extended the plan for an additional thirty (30) days due to the Plaintiff's missed time due to a vacation period. The Plaintiff was eventually accused of misconduct for misusing the company's expense accounts. The Plaintiff claims that the Defendant's accusations are false. On December 7, 2010, the Plaintiff was fired for his alleged misuse of the expense accounts.

Plaintiff brings the present action because he asserts that, a white female co-employee with the same New Orleans and Gulf Coast territory, was not placed on the performance plan despite the fact that she, like the Plaintiff, did not meet sales quotas after Hurricane Katrina. The Plaintiff further contends that his firing was on the basis of "suspicion, suppositions and innuendo" which was racially motivated. He further contends that he was subjected to a hostile work environment and he was fired in retaliation for bringing a complaint with the Equal Employment Opportunity Commission.

As to the instant motion, Plaintiff has noticed fact witness depositions of Defendant's President, Andy Wyss, General Counsel, Dorothy Watson, and Vice President of Human Resources, Stephen Baert, for December 2, 2010. Defendant contests these depositions, stating that these high ranking corporate officials do not possess any personal knowledge regarding facts underlying this litigation. Therefore, Defendant seeks to have a protective order prohibiting the depositions of these officials, and seeks to quash their notices of deposition. Defendant further seeks sanctions in the


form of costs associated with the motion due to Defendant's refusal to pursue alternative avenues of discovery to obtain the information he seeks from the deponents.

## II.    Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach*., 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective

order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### III. Analysis

Defendant contends that the noticed depositions are inappropriate because the deponents do not have any personal or unique knowledge of the facts related to the subject lawsuit. Defendant contends that deposing a high-level executive has the potential for harassment. Further, Defendant urges the to Court to apply the "apex doctrine." Defendant concedes that there is no rule that prohibits the deposition of a high-ranking corporate official, but contends that under the "apex doctrine," depositions of high-ranking corporate officials or either prohibited or significantly limited where the corporate executive has no personal knowledge of the subject matter of the litigation. Further, Defendant contends that the Plaintiff is required to obtain his discovery through less intrusive means.

Defendant contends that President Wyss and Vice President of Human Resources Baert were not employed by Novartis at the same time that the Plaintiff was employed by the company. Therefore, they do not have any personal knowledge about Turner's claims. Further, Defendant contends that there is no evidence that General Counsel Watson was consulted about any personnel decisions at issue in the present case. Defendant asserts that Turner's attempt to depose these

individuals is nothing more than harassment.

There is no Fifth Circuit law which applies the "apex doctrine" strictly prohibiting the deposition of high level executives. In fact, Federal Courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case. *Gautheier v. Union Pacific Railroad Co., et al.* 208 WL 2467016 (E.D. Tex. June 18, 2008); *see also In re Bridegestone/Firestone, Inc., Tires Products Liability Litig.,* 205 F.R.D. 535, 536 (S.D. Ind. 2002).

For example, in *Union Pacific,* the Court found that the deposition of corporate executives was appropriate where the Plaintiff had outlined their specific reasons for seeking the testimony of the executives at issue and offered the categories of information and specific areas of questioning the Plaintiffs sought. The Court further found that the Plaintiffs met the burden of demonstrating why the executive's knowledge was relevant to their allegations of gross negligence. *Id* at * 3. On that ground, the Court declined to issue a protective order.

Nonetheless, in *Union Pacific*, the Court quashed the depositions of the high ranking executives. The Court reasoned that the Plaintiff should first depose corporate representatives under Federal Rule of Civil Procedure 30(b)(6) before being able to acquire the testimony of the individual officers. *Id.* at * 4. The Court found that the information that the Plaintiffs sought regarded a formal policy of the Defendant organization. The Court found that the Plaintiffs had not previously noticed a Rule 30(b)(6) deposition and demonstrated that such a deposition would not supply the information sought.

Here, the Plaintiff did not provide the Court with any reason as to why the depositions of the President, General Counsel, or Vice President of Human Resources are relevant to his claims. In fact, the only indication the Court has as to the Plaintiff's reasoning was supplied by the Defendant. According to the Defendant, the Plaintiff informed them that he wished to depose these individuals "because he believes the Company continues to selectively target "undesirable" employees for

termination today, just as he claims it did when he was employed by Novartis in 2007." (R. Doc. 31-1, p. 2.)

Considering that neither the President nor the Vice President of Human Resources were employed by the Defendant at the time the Plaintiff was employed, these individuals would not have any knowledge which is relevant to Turner's claims. Furthermore, there is no indication that the General Counsel was involved in any way regarding the Plaintiff's claims. In light of the Plaintiff's failure to provide the Court with his own reasoning for selecting these individuals for deposition, the Court finds that the Plaintiff has failed to meet his burden of demonstrating how the depositions sought are relevant to his claim.

To the degree that the Plaintiff seeks information regarding a Novartis policy targeting African-Americans, like himself, for termination, as the court in *Pacific Union* explained, there are less intrusive means under the Rules of Civil Procedure which provide an avenue to seek that information. As a result, the Court finds that the depositions should be quashed.

At this time, however, the Court declines to issue a protective order prohibiting the depositions of these individuals. If the Plaintiff can demonstrate to the Court, after utilizing less intrusive means of discovery, that the deposition of these individuals is necessary, the Court will address the issue if properly submitted at that time. The Court further declines to award sanctions at this juncture.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Novartis Pharmaceuticals Corporation's **Defendant Novartis Pharmaceuticals Corporation's Motion for Protective Order and/or to Quash the Depositions of the Corporation's President, General Counsel, and Vice President of Human Resources (R. Doc. 31)** is hereby **GRANTED IN PART** and **DENIED IN PART.**

   •   **IT IS GRANTED** insofar as the Court orders that the notices of depositions fo

      Novartis' President Andy Wyss and General Counsel, Dorothy Watson, and Vice President of Human Resources, Steven Baert, be **QUASHED.**

- **IT IS DENIED** insofar as the Court declines to quash the notice of depositions for Novartis' Vice President of Human Resources, Steven Baert.

- **IT IS DENIED** insofar as the Court declines to award sanctions, in the form of attorney's fees.

      New Orleans, Louisiana, this 2nd day of December 2010

      **KAREN WELLS ROBY**
      **UNITED STATES MAGISTRATE JUDGE**