UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDRE TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO:    10-0175** |
| **NOVARTIS PHARMACEUTICALS** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

Before the Court is a **Defendant's Motion for Summary Judgment (R. Doc. 51)** filed by the Defendant, Novartis Pharmaceuticals Corporation (incorrectly named as Novartis Pharmaceutical)("Novartis"). The pro se Plaintiff, Andre Turner ("Turner"), opposes the motion. (R. Doc. 61.) This matter is before the undersigned United States Magistrate Judge upon consent of the parties pursuant to **Title 28 U.S.C. § 636(c)**.[1]

### I.    Background

Turner, an African American male, was employed by Novartis as a Senior Sales Consultant in the New Orleans area for the Company's Neuroscience sales force. He began his employment in May, 2002. The Plaintiff contends that he was an employee in good standing from May 2002 until August 2007. (R. Doc. 26, ¶ 2.) Following Hurricane Katrina, the Plaintiff's sales performance fell below the standards required by Novartis, causing the Plaintiff to be ranked among the bottom percentage of Novartis national employees. The Plaintiff contends that his drop in numbers is a direct

---

[1] R. Doc. 19.

result of the Hurricane, and Novartis had unrealistic expectations in raising his sales quota in spite of the devastation caused to his sales area. In August of 2007, as a result of his lackluster performance, Turner was placed on a 90 day Performance Improvement Plan ("PIP"). (R. Doc. 26, ¶ 6.) In November, 2007, Turner's PIP was extended by 30 days because he missed time due to a scheduled vacation period. (R. Doc. 26, p. 2.)

Turner contends that his territory partner, Roberta Power ("Power"), a white female, was not similarly put on a PIP despite also failing to meet her quota. Turner also asserts that Power's ranking fell below that of the Plaintiff. (R. Doc. 26, p. 9.) In his Complaint, Turner contends that after he recognized the different treatment of his partner, he filed a Charge with the EEOC alleging race discrimination.[2]

Subsequently, Turner was accused of misconduct regarding his use of the expense accounts because he made a comment that he had "trained" his customers to order lunch. This was construed as a statement that his customers were using his expense account to order lunch while Turner was not present. During the course of an investigation regarding the alleged misconduct, Turner made a comment to Power along the lines of, "if someone did something so despicable has [sic] to cause someone to loss [sic] their livelihoods they could come up missing." (R. Doc. 61, p. 10.) Turner was unaware at the time that he made his comment that Power had been interviewed regarding his alleged misuse of the expense accounts. Power reported this statement to the District Manager, Kerry Hegwood, contending that she felt threatened. Turner did not dispute making the statement.

Turner was ultimately terminated on December 7, 2007, for making the statement on the grounds that it violated Novartis' company policy. Turner contends that he was actually fired in

---

[2]Plaintiff's race discrimination charge is EEOC # 461-2007-2275. The charge was filed on August 24, 2007. (R. Doc. 51-11, pp. 19-27.)

retaliation for filing his Charge of Discrimination with the EEOC. As a result of his termination, Turner filed another charge with the EEOC alleging retaliation.[3]

On February 9, 2010, the Plaintiff filed his Complaint in the Eastern District of Louisiana. On May 14, 2010, he filed his First Amended Complaint. (R. Doc. 18.) Finally, on June 1, 2010, the Plaintiff filed his Second Amended Complaint. (R. Doc. 26.) He asserts claims for racial discrimination, retaliation, and hostile work environment pursuant to Title VII and § 1981 against Novartis, and individually named four former co-employees as defendants.[4] The Plaintiff did not make any state law allegations. On February 22, 2011, the co-workers named as defendants were dismissed for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5) and Turner's failure to prosecute and comply with the Federal Rules of Civil Procedure pursuant to Fed.R.Civ.P. 41(b) . (*See* R. Doc. 72.)

As to the instant motion, Novartis seeks summary judgment alleging that there is no genuine issue of material fact. Novartis seeks a dismissal of all of the Plaintiff's claims with prejudice at Plaintiff's cost. Novartis contends that the Plaintiff cannot make a *prima facie* showing of race discrimination, and even if he could, they have articulated a legitimate, nondiscriminatory reason for placing him on the PIP.

As for Novartis' retaliation claim, the Defendant contends that the Plaintiff cannot demonstrate a causal link between filing the charge with the EEOC and his termination because the individuals responsible for his termination were unaware that Turner had filed a charge. Finally, Novartis contends that the hostile work environment claim fails because it was not included in either charge

---

[3]Plaintiff's retaliation charge is EEOC # 461-2008-00370. The charge was filed on December 19, 2007. (R. Doc. 51-11, pp. 29-34.)

[4]The individually named Defendants are William Naro, Kerry Hegwood, Roberta Power, and Stephan Webb.

submitted to the EEOC. In support of the motion, Novartis attached: (1) excerpts of the transcript and exhibits of the deposition of Andre Turner; (2) an affidavit of Kerry Hegwood; (3) excerpts of the transcript of the deposition of Power; (4) an affidavit of Peter Streit; (5) an affidavit of Roseann Schwerdt; (6) an affidavit of Maria Woods; and (7) a declaration of Stephan Webb.

Turner opposes the motion. (R. Doc. 61.) Turner contends that he was discriminated against because he was placed on the PIP for his substandard sales performance even though the devastation of Hurricane Katrina hindered his sales. (R. Doc. 61, p. 6.) He contends that his territory partner, Power, was not held to the same standard even though she ranked below Turner. (R. Doc. 61, p. 8.)

Turner contends that Power was treated favorably because their manager, William Naro, desired to ensure that Power would retain her position over Turner due to impending layoffs at Novartis. *Id.* Naro's motivation stemmed from a fear that Turner would be called as a witness in an unrelated, pending litigation.[5] (R. Doc. 61, p. 7.) Further, Naro wanted to maintain Power as an employee due to her alleged sexual relationship with a key customer. (R. Doc. 61, p. 8.) In order to get Turner fired, Naro allegedly enlisted the assistance of Power and Hegwood.

Turner also contends that there is a memorandum written by Novartis that indicates that it would be retaliation, given the EEOC investigation regarding his discrimination charge, if he was interviewed by company headquarters in New Jersey regarding his alleged threatening statements to Power. (R. Doc. 61, pp. 12-13.) Notwithstanding this memorandum, Novartis conducted an interview.

---

[5]According to Turner, Naro is involved in litigation resulting from his tenure with Roche Laboratories, the previous employer of both Naro and Turner. The lawsuits include allegations for sexual harassment, racial discrimination, retaliation, assault and battery, and whistle blowing. The Court notes that the Plaintiff provided only the names of the pending lawsuits and did not provide which Court they were filed or the relevant case numbers. The case names provided by the Plaintiff are: *Varela v. Roche Labs, Michael Roberts v. Roche Labs, Stephanie Dangerfield, EEOC v. Bill Naro, Roche Labs, and Brad Zeringue v. Timothy McHugh, Roche Labs.*

## II.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled so summary judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The party seeking summary judgment is initially responsible for informing the Court of the basis for their motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. The moving party need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.* at 322-23; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986.)

The Court, when assessing whether a dispute as to any material fact exists, considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but summary judgment may not be defeated with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Little*, 37 F.3d at 1075.

## III.   Analysis

### A.   Hostile Work Environment

Novartis contends that summary judgment on the Plaintiff's hostile work environment claim

is appropriate because the Plaintiff did not include a hostile work environment claim in either of his charges submitted to the EEOC. As a result, Novartis contends that the Plaintiff is precluded from asserting his claim.

Employment discrimination plaintiffs must exhaust their administrative remedies before they may seek judicial relief. *McCain v. Lufkin Ind., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC. "The charge enables the EEOC to investigate, and, if appropriate, negotiate a resolution with an employer." *Id.* An employee may only sue the employer in federal court after administrative efforts terminate and the EEOC issues a statutory right to sue. *Id.*

There are two competing Title VII policies that the exhaustion requirement furthers. *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). The first policy is that the scope of an EEOC charge should be liberally construed "because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se." *Id.* The second policy is that the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* Accordingly, the Fifth Circuit has found that, keeping these two considerations in mind, what is properly embraced in a broad review of a Title VII claim "[is] not solely by the scope of the administrative charge itself, but [] the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970))(internal quotation marks omitted). In doing so, the Court must engage in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

"A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or

related to' acts that are alleged in the EEOC charge simply because both are based on the same type of discrimination." *Turner v. St. Luke's Episcopal Health Sys.*, 2008 WL 706709, * 8 (S.D. Tex. Mar. 14, 2008). In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." *Id.*

Here, "THE PARTICULARS" section of the Plaintiff's Charges of Discrimination makes no reference to his claim of hostile work environment. Plaintiff's first charge simply states,

> On August 7, 2007, I was placed on a 90 day Performance Improvement Plan (PIP) by William Naro, White. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race, Black, in that my White partner, whose performance rating was lower than mine, was not placed on a PIP.

(R. Doc. 51-11, p. 20.) The Plaintiff's second charge simply states,

> I was discharged on December 7, 2007. The reasons given for my discharge was violation of Respondent's ethics policy. I believe I was discharged in retaliation for filing Charge of Discrimination 461-2007-2275, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(R. Doc. 51-11, p. 30.)

The Plaintiff's charges are strictly limited to allegations of disparate treatment and retaliation and fail to suggest that Turner was also subjected to a hostile work environment. *See, e.g.*, *Cargo v. Kansas City Southern*, Civ. Action No. 05-2010, 2009 WL 3010832 * 2 (W.D. La. Sept. 16, 2009)(Hicks, J.)(investigation which could reasonably be expected to grow out of the Plaintiff's discrimination charge, alleging discriminatory discipline on the basis of race and age, did not include a claim of hostile work environment or retaliation); *Esukpa v. John Eagle Sports City Toyota*, 2006 WL 2371329, * 2 (N.D. Tex. Aug. 15, 2006)(finding that the investigation that can reasonably be

expected to grow out of a charge alleging only discriminatory discharge based on race and age would not include an investigation of claims of failure to promote, retaliation, harassment, or hostile work environment); *Chambers v. Principi*, 2006 WL 2255261, * 3 (S.D. Miss., Aug. 7, 2006)(stating that "where the EEOC alleges only one theory of discrimination," "a plaintiff cannot advance additional grounds of discrimination in her court action related to that charge").

As a result, the Court finds that the Plaintiff did not exhaust his administrative remedies as to his claim for hostile work environment. Therefore, summary judgment is appropriate as to this claim.

### B.     Racial Discrimination Pursuant to Title VII

Turner contends that he was discriminated against by being placed on the PIP. Turner alleges that, although his sales rankings did not meet the standards required by Novartis, the sales goals provided by the company were unreasonable in light of the devastation resulting from Hurricane Katrina. Further, he contends that his white territory partner, Power, was not similarly placed on the PIP despite her rankings falling below his.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits any employer, employment agency, or labor organization from engaging in unlawful employment practices based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e. For the purposes of Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year from the date of the alleged discriminatory act, and any agent of such a person." 42 U.S.C. § 2000e *et seq.*; *see also Vera-Lozano v. Int'l Broadcasting*, 50 F.3d 67 (1st Cir. 1995).

Title VII claims are reviewed under the framework promulgated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny. In order to show discriminatory treatment,

Plaintiff must first present a *prima facie* case of discrimination by the preponderance of the evidence to establish that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated employee who is not a member of his protected class.  *Id.*

The parties do not seriously contest that Turner, as an African American, is a member of a protected class or that he was qualified for his position.  Instead, the parties contest whether Turner suffered an adverse employment action by being placed on the PIP and whether he was treated less favorably than a similarly situated employee, Power.[6]

Novartis contends that placing an employee on the PIP does not constitute an actionable adverse employment action under Title VII because it is not an "ultimate employment decision."  (R. Doc. 51-1, p. 8.) Novartis contends that ultimate employment decisions include hiring, granting leave, discharging, promoting, and compensating a plaintiff.  *Id.*  Novartis contends that there is no evidence that Turner was ever denied leave, refused a promotion or had his salary or incentive compensation reduced as a result of the PIP.  *Id.*  In his opposition, Turner does not address this argument.

For purposes of a Title VII discrimination claim, "'adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"  *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)(quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).  An adverse employment action for purposes of Title VII does not include decisions made by an employer that serve only to limit an employee's opportunities for promotion but do not affect his job duties, compensation, or benefits. *Banks v. E. Baton Rouge Parish Sc. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Davis v. Miss.*

---

[6]The parties also do not contest that Power, a white female, is not a member of Turner's protected class.

*Transp. Comm'n*, 618 F.Supp.2d 559, 564 (S.D. Miss. 2009).

A negative employment evaluation, alone or even accompanied by an employee's placement on a performance improvement plan, does not rise to the level of an ultimate employment decision. *See Mattern v. Estman Kodak Co.*, 104 f.3d 702, 708 (5th Cir. 1997)(abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Felton v. Polles*, 315 F.3d 470, 488 (5th Cir. 2002). For example, in *Cannon v. St. Paul Fire and Marine Ins. Co.*, 2005 WL 1107372 (N.D. Tex. May 6, 2005)(Godbey, J.), the court considered whether an employee placed on a performance improvement plan was subjected to an adverse employment decision. In *Cannon*, the plaintiff's employer placed him on a forty-five-day improvement plan. However, he failed to meet the performance goals under the plan and was ultimately terminated for this failure. *Id.* at * 1. The court found that the plaintiff could not succeed on his discrimination claim with respect to the placement on the performance plan because "being required to successfully complete such a plan is not an adverse employment action as a matter of law." *Id.* at * 3. The court reasoned that under Fifth Circuit precedent, adverse employment actions do not include "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Id.* quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Thus, the court found that "an employer who is unsatisfied with an employee's work does not make an ultimate employment decision when placing the employee in a remedial program." *Cannon*, 2005 WL 1107372 at * 3. (*See also Williams v. North Texas Tollway Authority,* 2010 WL 2403740 (N.D. Tex. April 27, 2010)(Ramirez, J.)

Turner cannot succeed on his claim of discrimination with respect to the Performance Improvement Plan because it does not rise to the level of an adverse employment action for purposes

of Title VII. Furthermore, Turner has not made any allegations, and the record does not support a finding, that his placement on the PIP affected his compensation or resulted in any sort of demotion. In fact, the PIP itself makes no suggestion that the placement on the plan results in a decrease in compensation or results in a demotion and instead indicates that it is simply a plan designed to improve employment in order for an employee to maintain their position. (R. Doc. 51-7, pp. 44-45.)

Although the PIP could arguably have a tangential effect upon an ultimate employment decision, this is not enough for purposes of Title VII. Because Turner did not suffer an adverse employment action, he cannot establish a *prima facie* case of racial discrimination under Title VII. Accordingly, Novartis' motion for summary judgment with respect to his Title VII race discrimination claim resulting from the placement on the PIP is granted.

### C. Section 1981 Claims

Novartis contends that Turner's race discrimination claim under Section 1981 should be dismissed because it is prescribed. Novartis asserts that the applicable statute of limitations under Section 1981 is Louisiana's one year prescription period applicable to personal injury claims. (R. Doc. 51-1, pp. 13-14.) Alternatively, Novartis contends that Turner's claim fails because he cannot make a *prima facie* showing of discrimination under the *McDonnel Douglas* framework. (R. Doc. 51-1, p. 14.) Turner does not address these arguments.

Section 1981 does not contain a limitations period. As a result, courts have traditionally applied the relevant state personal injury limitations period. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661-62 (1987). In Louisiana, a one-year prescriptive period is assigned to tort actions. *See Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir. 1985). However, claims which arise under the 1991 revisions to Section 1981 are afforded a four-year limitations period. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The 1991 revisions allow a plaintiff to sue for conduct, such as

harassment or termination, that occurs after contract formation.

Here, Turner asserts his Section 1981 claim for racial discrimination resulting from his placement on the PIP. This resulted after his employment commenced with Novartis. As a result, it is an action made after contract formation, and a four year statute of limitations applies. Turner was placed on the PIP in August of 2007, and filed his Complaint on February 9, 2010, within the four year limitations period. As such, Novartis' argument that Turner's Section 1981 claim is prescribed is without merit.

However, Section 1981 and Title VII claims are "governed by the same evidentiary framework," such that analyses under both statutes are substantively the same. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n. 7 (5th Cir. 2004). Thus, under Section 1981, the plaintiff must establish a prima facie case of discrimination by demonstrating that he (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated employee who is not a member of his protected class. *McDonnell Douglas Corp.,* 411 U.S. at 802; *Bauer v. Albermarle Corp*., 169 F.3d 962, 966 (5th Cir. 1999). As described in Section B, above, Turner has failed to establish a *prima facie* case of racial discrimination because he has not demonstrated that he suffered an adverse employment action. As a result, Novartis' motion for summary judgment on Turner's Section 1981 claim is granted.

### D.     Retaliation Claim

#### 1.     *Prima Facie Case*

In order to establish a prima facie case of retaliation under Title VII, "a plaintiff must show that (1) [he] participated in a Title VII protected activity, (2) [he] suffered an adverse employment action by [his] employer, and (3) there is a causal connection between the protected activity and the adverse

action." *Stewart*, 586 F.3d at 331.  A Title VII retaliation case is also subject to the burden-shifting framework set forth in *McDonnell Douglas*. *LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 393 (5th Cir. 2007).

The parties do not seriously dispute that Turner participated in a Title VII protected activity or that he suffered an adverse employment action.  It is undisputed that Turner filed a charge with the EEOC after he was placed on the PIP and that he was terminated from Novartis.  Instead, the parties contest whether there is a causal connection between the protected activity and the adverse action.

Novartis contends that Turner cannot establish that a causal link exists between the Plaintiff's termination from the company and Turner's filing of the EEOC charge in 2007 alleging racial discrimination.  Novartis contends that the Plaintiff cannot demonstrate a causal link because neither Hegwood, the manager who first reported concerns about Turner's comments regarding meals with customers, nor Power, the individual who reported the threatening comment, knew that Turner had filed a charge with the EEOC.  (R. Doc. 51-1, p. 15.)  Further, Woods and Streit, the individuals who conducted the investigation, and Webb, the individual who ultimately decided to terminate the Plaintiff, were also unaware that Turner had filed a charge with the EEOC.  (R. Doc. 51-1, p. 15.)  In support, Novartis provided affidavits by Hegwood, Power, Woods, Streit, and Webb in which each individual attests to their lack of knowledge as to the Plaintiff's charge of discrimination.[7]

Turner, on the other hand, contends that Novartis was first notified of his charges by Deborah Urbanski, the EEOC ADR Coordinator in August 2007.  In support, he provided a letter from Urbanski which was addressed to Novartis' La Place, Louisiana location, dated August 30, 2007. (R. Doc. 61-1, p. 7, Exh. 2A).  He further contends that General Counsel, Maria Watson, notified Novartis Human

---

[7]Although Naro completed the Annual Performance Review of Turner which resulted in the Plaintiff's placement on the PIP, the record does not demonstrate that Naro actually participated in the termination of the Plaintiff.  However, to the extent that Naro was involved in the termination, the Court notes that the Defendant does not indicate whether or not Naro was aware that Turner filed a charge with the EEOC.

Resources of the discrimination investigation on November 16, 2007, although he did not provide any support for this contention.

Turner also contends that Novartis's Human Resources Department acknowledged in a memorandum that it would be retaliation, given the EEOC investigation, if they interviewed him in New Jersey regarding his alleged violations of Novartis policy. However, Novartis disregarded their own memorandum and flew the Plaintiff to New Jersey for an interview anyway.[8]

"If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Public Facility Mngmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)(citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994)). There must be some evidence that the individual who made the decision to fire the plaintiff knew of the protected conduct to give rise to a retaliation claim. *See Washington v. Veneman*, 109 F. App'x 685, 692 (citing *Chaney*, 179 F.3d at 168); *Lara v. Kempthrorne*, 673 F.Supp.2d 504, 520 (S.D. Tex. 2009).

Although Turner contends that the Human Resources Department created a memorandum indicating that it would be retaliation, given the EEOC investigation, if the Plaintiff was flown to the Defendant's headquarters regarding the threats, he has not provided any documentation to support that assertion. The Court has independently reviewed the record, and there is no such memorandum before the Court. Thus, the only indication that this memorandum exists is simply the Plaintiff's conclusory

---

[8] In his motion for summary judgment, Turner also seemingly attempts to make an allegation of retaliation by arguing that Naro exacted campaigns to get Turner terminated because he was fearful that the Plaintiff would be called as a witness in the pending Roche litigation. To the degree that Turner intended to extend his retaliation claim to include a cause of action for Naro's retaliation against him as a potential witness, this claim fails. Turner did not include any of these allegations in his charge with the EEOC, nor would they be reasonably expected to grow out of the allegations in his charge.

allegation.[9] However, mere allegations are not sufficient to defeat a motion for summary judgment. *Matsushita*, 475 U.S. at 587. Thus, this contention lacks merit.

However, despite the affidavits to the contrary, the Court finds that a genuine issue of material fact exists as to whether the individuals who contributed to the decision to terminate the Plaintiff, or who ultimately terminated the Plaintiff, had knowledge of the charge filed with the EEOC. Turner has produced a letter to the Human Resources Department informing the department of the Plaintiff's charge and a reasonable jury could find that, as a result of this letter, members of the human resources who either fired Turner or contributed to the decision to terminate him were aware of his charge with the EEOC. Thus, the Defendants have not established that the Plaintiff does not have a *prima facie* case of retaliation due to the absence of a causal connection.

### 2. **Legitimate Non-Discriminatory Reason for Termination**

However, although "[t]he establishment of a prima facie case gives rise to an inference of retaliation, this inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate non-discriminatory reason for the challenged employment action." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)(citing *Shirley v. Chrysler First, Inc.*, 970 f.2d 39, 41(5th Cir. 1992)). If the defendant has asserted such a reason, the inference created by the plaintiff's establishing a *prima facie* case dissipates. *Id.* As a result, summary judgment is appropriate unless the plaintiff can demonstrate that the defendant's rationale is pre-textual. *Id.* (citing *McDonnell*

---

[9]The only mention of retaliation that the Court finds in the record is in an e-mail from Maria Woods, the Associate Director, Ethics and Compliance, which served as a follow up to the telephone conversation regarding the Plaintiff's alleged violation of expense report policy. (R. Doc. 51-7, p. 49.) In this e-mail, Woods thanks the Plaintiff for speaking with her, and informs the Plaintiff that she is attaching a copy of the company's non-retaliation policy to the e-mail. According to the attached document, it is a violation of Novartis policy to retaliate against an employee for their cooperation in an investigation of another employee. (R. Doc. 51-7, p. 50.) Under the policy, an employee "should not take any actions in response to information discussed as part of an internal investigation that could be perceived as retaliatory." *Id.*

*Douglas*, 411 U.S. at 801-803).  The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was the "but-for" cause of the termination.  *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

Novartis contends that they have offered a legitimate, non-retaliatory reason for terminating Turner's employment.  Specifically, Novartis contends that during the course of the investigation relating to Turner's alleged misuse of the expense account, Turner made a threatening statement to Power in violation of the Defendant's non-retaliation policy.  Novartis asserts that Turner does not dispute that he made the statement.

Novartis further avers that the Plaintiff cannot demonstrate that the investigation itself was pretext for discrimination.  Novartis contends that it performed a thorough investigation by interviewing Turner by telephone, reviewing his expense reports, and questioning Power about the meals.  Further, upon being informed about the alleged threatening statements, Novartis investigated the incident by bringing the Plaintiff to New Jersey for an in person interview.  At the interview, Turner admitted to making the statements.  As a result, the company found that Turner has violated its policy of non-retaliation, and recommended the Plaintiff's termination.  It contends further that this action was unrelated to the fact that he filed a charge with the EEOC, and was a legitimate reason to fire the Plaintiff.

Turner, in his opposition, contends that after his sales performance improved while he was on the PIP, Naro realized that he was not going to be able to get the Plaintiff fired due to his sales performance.  As a result, he exacted two campaigns, with the assistance of Power and Hegwood, to ensure that the Plaintiff was terminated.  (R. Doc. 61, p. 9.)  The first campaign was the report that Turner had violated Novartis policy in regards to expense reports by providing meals to clients while he was not in attendance at the meetings. However, once the investigation demonstrated that Turner's

violations were unsubstantiated, particularly in light of Naro and Hegwood's signed approval of Turner's expenses, Power, Hegwood, and Naro initiated a second campaign.

In this campaign, Power, who was interviewed during the investigation regarding Turner's alleged violations of the expense accounts, contacted Turner for advice regarding the fact that she was questioned from Human Resources. During the course of this conversation, he made the statement that "if someone in the Navy did something so despicable has [sic] to cause someone to loss [sic] their livelihoods they could come up missing." (R. Doc. 61, p. 10.) Power reported this remark to Human Resources contending that she had been threatened.

Turner contends that, based on this accusation, Novartis Human Resources flew him to New Jersey to investigate the allegations. Turner contends that he was terminated for threatening a fellow employee, and for having an unauthorized conversation with Power about the expense investigation, contrary to Novartis policy. (R. Doc. 61, p. 10.) Although he concedes that he made the statement and had the conversation with Power, he disputes that he violated company policy because his remark was only "off hand" and was not threatening. Further, he implies, although he does not specifically argue, that Power "set him up" by contacting him for advice, causing him to have the conversation in violation of company policy.

Novartis has met their burden by proffering a non-retaliatory reason for Turner's termination. According to the "BPO Assignment and Pro Forma Information Report", submitted by the Plaintiff in support of his opposition, "Turner was terminated following a determination that he had violated the confidentiality related to the on-going compliance review and that he had made a statement to his counterpart that could be interpreted as retaliatory or threatening in nature."[10] (R. Doc. 61-1, p. 4, Exh.

---

[10]The Court further notes that the "Reminder of NPC Policy of Non-Retaliation and Promise of Confidentiality" which was e-mailed to the Plaintiff following his telephone interview regarding his alleged violations of the expense account reflect that Turner's actions could have been interpreted as a violation of company policy. First, Turner's

1C.) Further, Turner, in his deposition, concedes that during his investigation in New Jersey, he was interviewed regarding the alleged statement, and informed the interviewer that he made the statement. He contested, however, the meaning behind the statement. He stated that he didn't know that Power was involved in his investigation, so he couldn't have intended to threaten her. (R. Doc. 51-4, p. 28, Tab A.)

Importantly, while Turner contests the merits of the decision to terminate him, he does not make any argument, nor does he provide any evidentiary support, that the reasons proffered for his termination were pretext for firing him for filing a charge with the EEOC three years earlier. His arguments pertaining to his retaliation claim relate to the merits of the decision to terminate him and Naro's alleged efforts to ensure his termination. However, Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory intent. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997). An employer is permitted to make an incorrect employment decision, so long as it is based on a good faith belief with no discriminatory influences, the court will not try the validity of the reason. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Turner has failed to meet his burden of demonstrating that the legitimate reason provided by Novartis was pretext for firing him in retaliation for filing a charge with the EEOC. Thus, summary judgment on this claim is proper.

E.     **Costs**

As for Novartis' request for costs, the request is granted. Defendant, as the prevailing party,

---

alleged threatening statements could be construed as a violation of the policy which states, "[Novartis'] Code of Employee Conduct makes clear that no employee will suffer retaliation by the Company as a consequence of coming forward under the Code of Conduct . . ." (R. Doc. 51-7, p. 50.) Second, Turner's conversation with Power could be interpreted as a violation of the confidentiality policy which states, "[y]ou should not undertake any efforts to determine who may have raised concerns for the Company or treat any employee negatively based on their participation in a Company internal investigation." *Id.* It is clear that Novartis had a legitimate business reason for the termination of the Plaintiff. Whether their determination to terminate the Plaintiff was a wise decision, however, is irrelevant to the instant litigation for the reasons set forth below.

is entitled to recover their costs. Fed.R.Civ.P. 54(d)(1). Pursuant to the Federal Rules, unless a federal statute, court order, or the Federal Rules of Civil Procedure state otherwise, costs, other than attorney's fees, "should be allowed to the prevailing party." *Id.* Title VII does not expressly provide against awarding costs, thus "the standard procedure is to award costs to the prevailing party in Title VII suits." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 430 (5th Cir. 2000).

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Novartis Pharmaceuticals Corporation's **Defendant's Motion for Summary Judgment (R. Doc. 51)** is hereby **GRANTED** and all of Turner's claims against Novartis are **DISMISSED WITH PREJUDICE** and the Defendant's costs, other than attorney's fees, in these proceedings are assessed against the Plaintiff.

New Orleans, Louisiana, this 11th day of March 2011

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**